UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK
_____

SUWEN ZHANG,

               Plaintiff,        6:17-CV-06492(MAT)

   -v-                                 **DECISION AND ORDER**

NANCY A. BERRYHILL,
Acting Commissioner OF Social Security[1],

               Defendant.
_____

## INTRODUCTION

Suwen Zhang ("Plaintiff"), represented by counsel, brings this action under Title II of the Social Security Act ("the Act"), seeking review of the final decision of the Acting Commissioner of Social Security ("the Commissioner" or "Defendant"), denying her application for disability insurance benefits ("DIB"). The Court has jurisdiction over the matter pursuant to 42 U.S.C. §§ 405(g), 1383(c). Presently before the Court are the parties' competing motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. For the reasons set forth below, the Commissioner's decision is reversed, Plaintiff's motion is granted to the extent that the matter is remanded solely for calculation and payment of benefits. Defendant's motion is denied.

---

[1] Nancy A. Berryhill replaced Carolyn W. Colvin as Acting Commissioner of Social Security on January 23, 2017. The Clerk of the Court is instructed to amend the caption of this case pursuant to Federal Rule of Civil Procedure 25(d) to reflect the substitution of Acting Commissioner Berryhill as the defendant in this matter.

**PROCEDURAL BACKGROUND**

On September 27, 2013, Plaintiff protectively filed for DIB, alleging disability beginning April 1, 2013. Administrative Transcript ("T.") 222-29. The claim was initially denied on March 26, 2013, and Plaintiff timely requested a hearing. T. 96-132. An initial hearing was conducted on September 22, 2015, in Falls Church, Virginia by administrative law judge ("ALJ") Roxanne Fuller, for which Plaintiff did not appear. T. 82-85. A second hearing was conducted on December 10, 2015, in Falls Church, Virginia by the same ALJ, with Plaintiff appearing via video conference with her attorney, along with a Mandarin interpreter and a Cantonese interpreter. T. 59-80.

The ALJ issued an unfavorable decision on April 6, 2016. T. 39-58. Plaintiff timely requested review of the ALJ's decision by the Appeals Council. The Appeals Council denied Plaintiff's request for review on May 24, 2017, making the ALJ's decision the final decision of the Commissioner. T. 1-6. Plaintiff then timely commenced this action.

**THE ALJ'S DECISION**

The ALJ applied the five-step sequential evaluation promulgated by the Commissioner for adjudicating disability claims. *See* 20 C.F.R. § 404.1520(a). At step one, the ALJ found that Plaintiff had not engaged in substantial gainful employment since her alleged onset date of April 1, 2012. T. 44. At step two, the

ALJ determined that Plaintiff has the "severe" impairments of depression and schizophrenia. *Id.* At step three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. T. 45.

Before proceeding to step four, the ALJ assessed Plaintiff as having the residual functional capacity ("RFC") to perform a full range of work at all exertional levels as defined in 20 C.F.R. 404.1567, with the following nonexertional limitations: able to perform simple, repetitive, routine tasks; no interaction with the public; and only occasional, superficial interaction with coworkers and supervisors. T. 46.

At step four, the ALJ found that Plaintiff is able to perform her past relevant work as a hand packager. T. 53. At step five, the ALJ relied on the VE's testimony to determine that, in addition to being able to perform her past relevant work, a person of Plaintiff's age, and with her education, work experience, and RFC, could perform the requirements of the following representative jobs that exist in significant numbers in the national economy: Dishwasher (Dictionary of Occupational Titles ("DOT") No. 318.687-010, unskilled, SVP 2, medium exertional level); Salvage laborer (DOT No. 929.687-022, unskilled, SVP 2, medium exertional level); and Hospital cleaner (DOT No. 323.687-010, unskilled, SVP 2, medium exertional level). T. 54. The ALJ accordingly found that Plaintiff

had not been under a disability, as defined in the Act, since the application date. *Id.*

## SCOPE OF REVIEW

A district court may set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by "substantial evidence" or if the decision is based on legal error. 42 U.S.C. § 405(g); *see also Green-Younger v. Barnhart*, 335 F.3d 99, 105-06 (2d Cir. 2003). The district court must accept the Commissioner's findings of fact, provided that such findings are supported by "substantial evidence" in the record. *See* 42 U.S.C. § 405(g) (the Commissioner's findings "as to any fact, if supported by substantial evidence, shall be conclusive"). "Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000) (quotation omitted). The reviewing court nevertheless must scrutinize the whole record and examine evidence that supports or detracts from both sides. *Tejada v. Apfel*, 167 F.3d 770, 774 (2d Cir. 1998) (citation omitted). "The deferential standard of review for substantial evidence does not apply to the Commissioner's conclusions of law." *Byam v. Barnhart*, 336 F.3d 172, 179 (2d Cir. 2003) (citing *Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir. 1984)).

## DISCUSSION

Plaintiff contends that remand for calculation and payment of benefits is warranted because the ALJ failed to properly weigh the opinions of Plaintiff's treating psychiatrist, Dr. Cui, and Plaintiff's treating psychologist, Dr. Kwasnik. In particular, Plaintiff argues that the ALJ: (1) failed to give proper weight to the disability-supporting opinions of Drs. Cui and Kwasnik; (2) failed to give good reasons for rejecting the disability-supporting opinions; and (3) failed to properly evaluate the objective evidence in Drs. Cui and Kwasnik's treatment notes. Plaintiff further contends the ALJ failed to properly evaluate Plaintiff's testimony under the applicable regulations. Specifically, Plaintiff argues that the ALJ: (1) failed to apply the proper legal standard set forth in SSR 16-3p when she evaluated Plaintiff's credibility; and (2) further erred by failing to provide good reasons for rejecting Plaintiff's statements.

For the reasons discussed below, the Court agrees with Plaintiff that, under the applicable regulations, the ALJ was required to afford controlling weight to Dr. Cui and Dr. Kwasnik's opinions. Moreover, because Dr. Cui and Dr. Kwasnik's opinions establish that Plaintiff suffers from disabling limitations, remand of this matter solely for calculation and payment of benefits is warranted.

## I. Evaluation of Treating Physicians' Opinions

Under the Commissioner's regulations in place at the time the ALJ issued her operative decision, a treating physician's opinion is generally entitled to "controlling weight" when it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(c)(2); *see also Green-Younger*, 335 F.3d at 106. An ALJ may give less than controlling weight to a treating physician's opinion if it does not meet this standard, but must "comprehensively set forth [his or her] reasons for the weight assigned to a treating physician's opinion." *Halloran v. Barnhart*, 362 F.3d 28, 33 (2d Cir. 2004); *see also* 20 C.F.R. § 404.1527(c)(2) ("We will always give good reasons in our notice of determination or decision for the weight we give [the claimant's] treating source's opinion."). The ALJ is required to consider "the length of the treatment relationship and the frequency of examination; the nature and extent of the treatment relationship; the relevant evidence, particularly medical signs and laboratory findings, supporting the opinion; the consistency of the opinion with the record as a whole; and whether the physician is a specialist in the area covering the particular medical issues" in determining how much weight to afford a treating physician's opinion. *Burgess v. Astrue*, 537 F.3d 117, 129 (2d Cir. 2008) (quotation marks,

alterations, and citations omitted); *see also* 20 C.F.R. § 404.1527(c)(1)-(6). However, the ALJ need not expressly discuss each of these factors, so long as his "reasoning and adherence to the regulation are clear." *Atwater v. Astrue*, 512 F. App'x 67, 70 (2d Cir. 2013) (unpublished opn.) (citing *Halloran*, 362 F.3d at 31–32).

**A. Disability-Supporting Opinion of Dr. Xingjia Cui**

On September 27, 2015, Dr. Cui completed a Mental Impairment Questionnaire. T. 340-44. Dr. Cui reported he had been treating Plaintiff on a monthly basis since July 6, 2013. T. 340. He diagnosed Plaintiff with chronic paranoid schizophrenia, which was expected to last at least twelve months and was being treated with Quetiapine. *Id.* To support his diagnosis, Dr. Cui reported Plaintiff suffered from symptoms of a depressed mood, decreased energy, easy distractibility, poor immediate memory, paranoia and suspiciousness, auditory hallucinations, and insomnia. T. 341. Regarding Plaintiff's auditory hallucinations, Dr. Cui reported Plaintiff heard the voice of a stranger several times a day, every day. T. 341-42. He further reported that Plaintiff experiences episodes of decompensation or deterioration in a work setting, noting that she "[c]an't function well in the social setting as she tends to talk to herself." T. 342. Regarding work-related mental abilities, Dr. Cui opined Plaintiff has marked limitations in remembering locations and work-like procedures; understanding and

remembering one-to-two step instructions, as well as detailed instructions; carrying out detailed instructions; maintaining attention and concentration for extended periods; interacting appropriately with the public; and maintaining socially appropriate behavior. He opined Plaintiff has moderate-to-marked limitations in all other areas, including the ability to carry out simple instructions; perform within a schedule; complete a workday without interruptions from psychological symptoms; accept instructions and respond appropriately to criticism from supervisors; adhere to basic standards of neatness; and respond appropriately to workplace changes. T. 343. Finally, Dr. Cui opined Plaintiff would be absent from work as a result of her impairments or treatment more than three times per month, on average. T. 344.

In her decision, the ALJ assigned "little weight" to Dr. Cui's treating source statement. T. 52. The ALJ found Dr. Cui's opinion to be inconsistent with the Plaintiff's medical record, including his treatment notes and Plaintiff's medication regimen. *Id.* The ALJ found that because Dr. Cui never changed Plaintiff's medication, Plaintiff was presumably stable during her treatment. She further found that because Plaintiff had reported to Dr. Cui that she enjoyed activities such as reading and painting, and that she had visited friends and family in China, that she was significantly improving during her treatment. T. 53.

As discussed below, the ALJ's reasons for discounting Dr. Cui's well-supported medical opinion are legally erroneous. As a threshold matter, when analyzing a treating physician's report, an "ALJ cannot arbitrarily substitute his own judgment for competent medical opinion." *Rosa v. Callahan,* 168 F.3d 72, 79 (2d Cir. 1999) (quoting *McBrayer v. Secretary of Health and Human Servs.*, 712 F.2d 795, 799 (2d Cir. 1983)). Here, the ALJ's finding that Dr. Cui "generally found that the [Plaintiff's] mental status examinations were normal" (T. 52) is a mischaracterization of the record. At no point in his treatment notes, nor in his source statement, does Dr. Cui state that Plaintiff's mental status examinations were "normal." *See* T. 349-83. To the contrary, at various sessions, Dr. Cui noted Plaintiff exhibited an anxious mood with congruent affect (T. 375), a depressed mood with congruent affect (T. 382), a distressed mood with congruent affect (T. 354), a reserved attitude, auditory hallucinations, distractibility due to voices, problems with memory, confusion, and sleep problems, and startle response (T. 387). Subjectively, he noted Plaintiff reported she was "still distracted by voices . . . doing funny things in public," and unable to concentrate (T. 363), talking back to voices (T. 375), and trying to ignore the voices (T. 351). In concluding that these findings support her conclusion they are "normal" symptoms, the ALJ improperly assumed the role of a treating physician. *See Wilson v. Colvin*, 213 F. Supp.3d 478, 490-

91 (W.D.N.Y. 2016) (finding an ALJ's reliance on his own lay opinion over multiple medical opinions, as well as his misconstruction of the medical record served as basis for reversing the Commissioner's decision). The fact that Dr. Cui's treatment notes described Plaintiff as stable, cooperative, and at times in a "good" mood does not negate the severity of her mental impairments, nor does it warrant the ALJ's finding that the exams were "normal". Individuals with mental illnesses often "adopt a highly restricted and/or inflexible lifestyle within which they appear to function well." *Callahan v. Berryhill*, No. 6:17-CV-06245 (MAT), 2018 WL 1616058, at *5 (W.D.N.Y. April 4, 2018) (quoting SSR 85-15, 1985 WL 56857, at *6). "A claimant's ability to perform adequately when she is in structured, supportive settings—such as medical or psychiatric appointments, which have lowered psychological pressures and interpersonal demands—does not necessarily predict performance and ability to cope in the competitive work environment." *See id*. ("The reaction to the demands of work (stress) is highly individualized, and mental illness is characterized by adverse responses to seemingly trivial circumstances.").

Furthermore, the Second Circuit has held that an ALJ may not reject a treating physician's opinion based solely on the ALJ's perceived inconsistencies between the physician's treatment notes and his or her medical opinion. *See Balsamo v. Chater*, 142 F.3d 75,

80 (2d Cir. 1998) ("The ALJ erred in rejecting the opinions of these [treating] physicians solely on the basis that the opinions allegedly conflicted with the physicians' own clinical findings."); *Griffel v. Berryhill,* No. 16-CV-1772 (MKB), 2017 WL 4286254, at *9 n. 10 (E.D.N.Y. Sept. 26, 2017) ("To the extent the ALJ rejected [the treating source]'s opinions on the basis that [the treating source]'s '[m]ental status examinations consistently demonstrate[d] normal to mild cognitive symptoms,' such rejection was erroneous because the ALJ may only reject [the treating source]'s opinions based on contradictory medical opinions, not based on the ALJ's interpretation of [the claimaint]'s medical records.") (citing *Balsamo*, 142 F. 3d at 80; *Camille v. Colvin*, 652 F. App'x 25, 28 (2d Cir. 2016) (unpublished opn.)). The only contradictory medical opinions of record here are those of reviewing, non-examining State agency consultant E. Kamin, Ph.D. (T. 87-91), and one-time consultative examiner, Christine Ransom, Ph.D. (T. 317-20). As addressed in detail in section III below, deference should be given to a treating physician's medical opinion, which is based on a Plaintiff's longitudinal medical history, over that of a one-time consultative examiner, especially in the context of mental disabilities. *See* 20 C.F.R. §§ 404.1527(d), 416.927(d), *Nasca v. Colvin*, 216 F. Supp.3d 291, 297 (W.D.N.Y. 2016) (finding that ALJ erred in giving great weight to consulting psychiatrist's opinion

while giving only "limited weight" to plaintiff's treating psychiatric sources).

**B. Disability-Supporting Opinion of Dr. Thomas Kwasnik**

On August 25, 2015, Dr. Kwasnik completed a Mental Impairment Questionnaire in which he reported treating Plaintiff approximately two-to-three times per month since June 2014. T. 331-36. He diagnosed Plaintiff with paranoid-type schizophrenia, noting she was currently stabilized and in partial remission with medications and psychotherapy, with a current GAF of fifty. *Id.* He further noted Plaintiff has psychosocial and environmental problems, including a reclusive husband, mentally ill son, social isolation, and hearing voices. She was taking the medications Quetiapine and Risperidone. Dr. Kwasnik opined Plaintiff's diagnoses and limitations were expected to last at least twelve months. *Id.* To support his diagnosis, Dr. Kwasnik reported Plaintiff suffered from symptoms of decreased energy; speech abnormalities due to her difficulty with the English language; social withdrawal or isolation; difficulty thinking or concentrating; easy distractibility; flight of ideas; poor immediate, recent, and remote memory; paranoia and suspiciousness; auditory hallucinations; and insomnia. T. 332. He further reported that Plaintiff experiences episodes of decompensation or deterioration in a work setting, noting that she "feels overwhelmed, confused, [and] scared when stressed." T. 333. Regarding work-related

mental abilities, Dr. Kwasnik opined Plaintiff has marked limitations in remembering and carrying out detailed instructions; maintaining attention and concentration for extended periods; performing activities within a schedule and consistently being punctual; sustaining an ordinary routine without supervision; making simple work-related decisions; completing a workday without interruptions from psychological symptoms; and performing at a consistent pace without rest periods of unreasonable length or frequency. He opined Plaintiff has moderate-to-marked limitations working in coordination with or near others without being distracted by them; interacting appropriately with the public; asking simple questions or requesting assistance; accepting instructions and responding appropriately to criticism from supervisors; responding appropriately to workplace changes; and traveling to unfamiliar places or using public transportation. T. 334. Dr. Kwasnik also noted Plaintiff is easily fatigued, has muscle weakness, and would likely be absent from work more than three times per month as a result of her impairments or treatment. T. 335. Finally, Dr. Kwasnik opined Plaintiff "is currently totally unemployable and expected to remain so into the foreseeable future even with continued pharmacotherapy and psychotherapy." *Id.*

In her decision, the ALJ assigned "little weight" to Dr. Kwasnik's treating source statement. T. 52. The ALJ found Dr. Kwasnik's opinion inconsistent with the Plaintiff's medical

record, including Dr. Kwasnik's treatment notes. *Id.* The ALJ noted in her decision that Dr. Kwasnik had recommended conservative treatment involving pharmacotherapy and psychotherapy and had earlier found Plaintiff's prognosis to be fair. She further noted that Dr. Kwasnik pointed to only one instance of the Plaintiff responding to an auditory hallucination during a treatment session, and that she appeared engaged during her sessions and showed significant improvement with treatment. *Id.*

As previously noted, it is error for an ALJ to reject a treating source's opinion solely because it allegedly conflicts with that source's treatment notes, particularly in cases of mental illness. *See Balsamo*, 142 F. 3d at 80. Dr. Kwasnik's opinion was similar in all relevant respects to the opinion of Dr. Cui, which, as set forth above was well-supported by the evidence of record. Accordingly, the ALJ's substitution of her own judgment in place of Dr. Kwasnik's well-supported opinion was erroneous for the same reasons discussed above.

**III. Evaluation of One-Time Consultative Examiner's Opinion**

The Court finds the ALJ further erred by granting "great weight" to the consultative opinion of one-time examining psychiatrist, Dr. Christine Ransom. As several courts in this Circuit have recognized, the applicable treating physician rule is "even more relevant in the context of mental disabilities, which by their nature are best diagnosed over time." *Nasca*, 216 F. Supp.3d

at 297, (quoting *Santiago v. Barnhart*, 441 F. Supp.2d 620, 629 (S.D.N.Y. 2006)). Indeed, "a physician who has a long treating history with a patient is better positioned to evaluate the patient's disability than a doctor who observes the patient once for the purposes of a disability hearing." *Id.* (citing *Schisler v. Sullivan*, 3 F.3d 563, 568 (2d Cir. 1993)).

Dr. Ransom performed a psychological evaluation of Plaintiff on December 2, 2013. T. 317-20. Dr. Ransom diagnosed Plaintiff with major depressive disorder, currently mild. In her source statement, Dr. Ransom opined Plaintiff could follow and understand simple directions and instructions, perform simple tasks independently, maintain attention and concentration for simple tasks, maintain a simple regular schedule, and learn simple new tasks. She further noted Plaintiff would have mild difficulty performing complex tasks, relating adequately with others and appropriately dealing with stress due to her major depressive disorder. T. 319. Notably, Dr. Ransom made no mention of Plaintiff's diagnosis of paranoid schizophrenia in her report. Despite this omission, the ALJ opted to give Dr. Ransom's opinion "great weight", though the ALJ herself had found Plaintiff had the severe impairment of schizophrenia. T. 51, 44.

Furthermore, the ALJ noted in her opinion that Plaintiff is not fluent in English, making it difficult for her to interact with others. T. 45. At the hearing, Plaintiff testified in Cantonese and

two interpreters were provided to aid her understanding of the proceeding. T. 61-62. However, Dr. Ransom's report indicates Plaintiff's speech was "fluent and intelligible . . . language skills were adequate to complete the evaluation without difficulty" at the consultation, despite the apparent lack of an interpreter. T. 318. The ALJ fails to note or attempt to reconcile this conflict in her decision.

Based on the foregoing, the ALJ committed error by granting "great weight" to a consultative opinion that missed the mark on Plaintiff's well-documented diagnosis of schizophrenia, ignored Plaintiff's language barriers, and conflicted with the opinions of Plaintiff's treating psychiatrist and psychotherapist.

**IV.  Assessment of Plaintiff's Credibility**

Plaintiff's final argument is that the ALJ failed to apply the appropriate standard when evaluating Plaintiff's testimony, requiring remand. The Court sees no reason to evaluate Plaintiff's argument at this time, as Plaintiff's independent argument for remand based on an improper evaluation of Plaintiff's treating physicians prevails.

**V.  Remedy**

Under 42 U.S.C. § 405(g), the district court has the power to affirm, modify, or reverse the ALJ's decision with or without remanding for a rehearing.  Remand solely for calculation and payment of benefits is appropriate where the record persuasively

demonstrates the claimant's disability, *Parker v. Harris*, 626 F.2d 225, 235 (2d Cir. 1980), and there is no reason to conclude that additional evidence exists that might support the Commissioner's claim that the claimant is not disabled, *Butts v. Barnhart*, 388 F.3d 377, 385-86 (2d Cir. 2004).

For the reasons set forth above, the Court finds that the ALJ's decision to give less than controlling weight to the opinions of Plaintiff's treating physicians, Dr. Cui and Dr. Kwasnik, was legally erroneous and unsupported by substantial evidence. Had the ALJ given proper weight to Dr. Cui and Dr. Kwasnik's medical opinions, a finding of disability would have necessarily followed. This conclusion is confirmed by an April 2017 opinion letter from Dr. Kwasnik in which he indicates, "[Plaintiff] has been totally unemployable for the past seven years due to her schizophrenic disorder . . . Based on her severe chronic intractable psychiatric impairment, it is more likely than not that she will remain totally and permanently unemployable." T. 22. Accordingly, the Court finds that remand solely for the calculation and payment of benefits is warranted.

## CONCLUSION

For the foregoing reasons, the Court finds that the Commissioner's decision was legally erroneous and is not supported by substantial evidence. It is therefore reversed. Accordingly, Defendant's motion for judgment on the pleadings (Docket No. 12) is

denied, and Plaintiff's motion for judgment on the pleadings (Docket No. 8) is granted, and the case is remanded solely for the calculation and payment of benefits. The Clerk of Court is directed to close this case.

**ALL OF THE ABOVE IS SO ORDERED.**

                                      Michael A. Telesca
                                      _____
                                      MICHAEL A. TELESCA
                                      United States District Judge

Dated: June 22, 2018
      Rochester, New York